And with me are my co-counsel, Jenny Deasy, and Karen Gelson. I'd like to reserve five minutes for rebuttal, please. All right. Noted. The issue before this court is whether Iris Calogero, who received Road Home Grant monies, is a consumer within the meaning of the Federal Debt Collection—Fair Debt Collection Practices Act, and whether her alleged obligation to return some portion of those monies is a debt within the meaning of that statute. When did it become a debt? When did it become a debt? It became a debt at the moment that they indicated that she had received overpayment. It probably, in their point of view— So the transaction where she received the grant didn't create a debt? It did, because their claim is that she had the excess money from the get-go. But whether she did or did not, the statute doesn't rule her out, because to fit the statutory definition, what the debt has to do is arise out of a transaction. The statute doesn't restrict when the arising happens. And I will be brief in my argument, because the statute has done most of my work for me. The FDCPA says, broadly and simply, the term consumer means any natural person obligated or allegedly obligated to pay any debt. Then the question becomes whether the alleged grant overpayment, as you've asked, is a debt. The statute defines debt also clearly and simply and relatively briefly, and I'm going to take this one clause at a time. The term debt means any obligation or alleged obligation of a consumer to pay money. We know that she has an alleged obligation to pay money. Whether she's a consumer circles back to the question of whether this is an FDCPA debt. Next, and this is the question that Judge Graves raised, arising out of a transaction. We know there was a transaction here. It was a lengthy contract under which Mrs. Calagaro bound herself to multiple obligations, all of which fulfilled the state and federal government's objectives in extending this grant to her. She had to return to the home as her primary residence. She had to maintain it as her primary residence for a number of years. And if she sold it, she had to make sure that a buyer fulfilled those obligations too. We also know, getting back to Judge Graves' question, that the alleged obligation arose out of that transaction because the paper she signed at the outset specifically acknowledged that if her road home grant funds were duplicative of FEMA or insurance payments, she would have to pay them back. That was part of her contract. Finally, we know that the road home money, property or insurance or services, and let's stop at that clause for a minute, because the district court was looking primarily at property or services, but the statute clearly says here, with an or, that money suffices. And we know that the money, which was the subject of the transaction, was intended primarily for personal, family or household purposes, the restoration of her storm-damaged home. And so, because the debt fits within the statutory definition, and because she is allegedly obligated to pay it, she is an FDCPA consumer. We ought to be able to stop right there. The district court got crosswise of the statute because it regarded consumer, the way most of us do in lay terms, someone who purchases goods or services and owes the money right there at the initiation of the contract. The court found plenty of support for that understanding because that is, after all, the most commonplace form of consumption that we're accustomed to dealing with. And that's what most of the courts have dealt with. But none of the cases cited by the court or by the defendants ever said that a road home grant fund overpayment was excluded from the reach of the FDCPA. Nor could they have said such a thing because none of those cases addressed that question. You are the first court to reach this question. And as we know, in the case of statutory construction... If anything, does that suggest that the statute is not applicable to these kind of contingency grant fund programs? If there's a dearth of case law about this in the 45 years or so of the Act, does that suggest that the Act, in fact, doesn't apply? Not at all. I believe that there is a dearth of cases because there is a dearth of road home grant programs. And with good reason. It was a cockamamie program in which HUD gave up all kinds of administrative duties to the state. It set up something that was really sui generis. We do have other cases that are somewhat like it. If you look at student loan cases, for example. Or if you look at the cases where money is mistakenly deposited into someone's account and the overpayment is due back. In that latter case, that was found not to be an FDCPA case because there was no transaction. But here, there was a clear transaction in which she set up this debt and obligated herself to pay it if it arose. The Supreme Court has said, language of the statute, first off. In Obdusky, the court also said, for those of us who like that sort of thing, we can look at the legislative history. And in this case, Congress put its purpose in enacting this statute in the preamble where it said that it was trying to eliminate, well, it hasn't eliminated them, but it has somewhat curbed, the abuses in debt collection that became rampant with the proliferation of federal debt collectors. To achieve that objective, it defined both consumer and debt broadly, as we've seen. It did carve out some clear exceptions. It said a creditor who himself goes after his debt is not under the umbrella of the FDCPA. It was looking at professional debt collectors and their practices. It also was looking mostly to protect little people, not big business debt. And that's why it included in its definitional language this business about the money arising out of the transaction has to be the subject, or primarily for personal, family, or household purposes. Because Congress understood that it was individuals who were going to need the protections businesses could fend for themselves. They were looking for less sophisticated people who wouldn't be familiar with the ins and outs of debt collection. And it is hard to imagine a more vulnerable... So you're contending we're dealing with a professional debt collector in this case? Oh, we are absolutely dealing with a professional debt collector. There's no question. That's not in dispute on this record. Even though, in answer to the judge's question, there are no road home grant overpayment collection cases on the books, the statutory framework in which this grant recapture, as defendants like to call it, arose, makes doubly clear that this is, in fact, debt collection. The funds that they are trying to capture are alleged FEMA and insurance overpayments to Mrs. Calagaro. And the very reason the state is trying to recapture those monies is because the Stafford Act, which applied to the state of Louisiana in its receipt of this huge block grant, requires that the state go after any payments that are duplicative of the grant funds. And that is also why Mrs. Calagaro's contract language included her obligation to refund any monies she received that were duplicative of the Stafford Act. The Stafford Act also says that any pursuit of these duplicative payments has to be made under Title 31. And Title 31, in turn, gives the federal government and the state the authority to hire a professional contract debt collector. And it also says that when they do that, that debt collector is subject to the terms of the FDCPA. So the statute, its language, its purpose, its legislative history, and the statutory framework in which this debt arose all say clearly this is debt collection subject to the FDCPA. Thank you. I'll reserve my time. May it please the Court. You may proceed. Good morning, Your Honors. David Daly on behalf of the Appellees and Dependents, shows Callie and Walsh, Mary Catherine Callie, and John C. Walsh. This is a FDCPA lawsuit filed by an individual, but also brought as a potential class action arising out of the Road Home Program grants that were made. There were two issues that were brought before the trial court on a 12b6 motion. Not 12b6, but a 12b motion. The first issue was what the court ruled on, which was whether or not this actually qualifies under the FDCPA. And the second issue was whether or not the claim that this was a violation of the FDCPA because the underlying debt was prescribed or time barred, whether or not that was a valid claim. The court didn't address the second issue because it only ruled in favor of the defendants on the first. I think the seminal, so I'd like to address both of those issues and answer any questions that the court might have. I think the seminal place to start was something that the trial court district judge stated, which was that not all obligations to repay qualifies debts under the Fair Debt Collection Practice Act. In this case, well, in most of the cases, all the FDCPA cases that I've seen, we have an underlying transaction, a purchase of goods or services. It's usually a credit transaction. Sometimes there's a loan involved. That's not what we have here. We had the federal government giving money to the state and telling the state to create a program to help these people that were damaged by the hurricane. The state created the programs, all the different requirements and how much money was going to be provided, the oversight, everything. And that money was then made available to people as a grant. Was the requirement in there that the monies be used for home repair in return? There were several different requirements, but that was one of the requirements. There were several things that the contract that you heard her discuss that was signed had lots of requirements that the person who was receiving the grant money had to fulfill. And again, as she stated, that was a contract between the state of Louisiana and the claimant. I'm sorry, not the claimant, but the person who was going to be receiving the money. So yes, that was one of the things. And it was expressed that any funds not used would be returned? To the state of Louisiana, yes, Your Honor. That was within the confines of the contractual agreement that the monies would be returned to the state of Louisiana under the program. So now this was a grant. There's no obligation to repay the grant unless you don't abide by the terms of the grant. So that's the difference between this and all the other FDCPA debt cases that we've seen. And this is not the type of debt, this is not the type of transaction that the FDCPA was designed to protect people from. As Your Honor mentioned, I can't find any case dealing with this. Now, there are lots of cases that talk about the actual obligation to repay and where that came from and whether or not that meets the definition under the FDCPA of debts. We had the library return cards, we had overpayments at banks, we had a bonus overpayment, things like that where the courts have said, this is not the traditional debt-type situation where we're trying to protect consumers from unscrupulous debt collectors. Instead, we have a grant from the state of Louisiana, money that's provided to the individuals that they don't have to repay unless they don't abide by the terms of the agreement. So the big difference in this case is that the quality of the actual transaction, the money changing hands at issue in this case, there was no purchase of services or goods. There was simply a grant that was provided to Ms. Calagaro and others in order to assist them. There was no reciprocal transaction other than that she had to abide by the terms of the agreement. The court cited the cases that deal with the quality and the determination of whether or not the debt itself falls under the FDCPA. I think those cases are on all fours with this other than the fact that, as Your Honor noted, we haven't had to deal with someone bringing an FDCPA claim over grants. This isn't the first situation where grant money has been provided to citizens of the United States. The federal government, the state government have been providing grants to its citizens for a long time. They create mechanisms to provide that money. They provide the money to them and there are requirements associated with them. This isn't the first time. The Katrina disaster was not the first disaster where road home money was provided, and it won't be the last. Now, the second issue... Actually, there was a discussion about the cases in Larry Counsel's brief, and one of the things that struck me was the dissent in the Hamilton case by Judge Garza. I wanted to, if I could, take a second to read that. When he was talking about whether or not the debt in that situation or the obligation in that situation met the FDCPA definition of debt, Judge Garza said, The act was drafted to protect consumers who were having difficulty paying their debts. It was not intended to protect an accident victim who attempts to get a windfall by receiving money from multiple sources. I think that's similar to what we're dealing with here. There was a grant that was provided without any reciprocal obligations other than abiding by the terms of the grant. The second issue that was raised in our motion before the Court that was not addressed was whether or not the central claim in this matter, which is that the efforts of the defendants in this case to seek repayment was in fact time-barred, therefore a violation of the FDCPA. If this Court agrees with the District Court that this was not a FDCPA debt to begin with, therefore the FDCPA doesn't apply, then we never reach that issue. If, however, the Court were to disagree with that, then the next issue becomes, did the defendants in this case try to collect on a debt that was time-barred? And the only argument they make for that is that the federal statute applies, the federal six-year statute applies, as opposed to the Louisiana 10-year breach of contract prescriptive period. And they can only succeed in that by saying, well, sure, she signed a contract with Louisiana. Sure, the money came from Louisiana. Sure, the money has to be repaid by Louisiana. Sure, it's Louisiana who's seeking return of the money. But in reality, the Road Home Program and all the Louisiana programs involved were federal agencies. I think that the U.S. v. Orleans case that we cited in our brief deals with that issue. And there was a quote from another U.S. Supreme Court case that I thought was helpful. It's Forsham v. Harris citing the Orleans case. It said, Grants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision. That's quoting that from the U.S. v. Orleans case. I noted when counsel made her argument, one of the things she started with when she was talking about the problems, her perceived problems with the program was, she said, and I wrote it down, HUD gave up all kinds of administrative duties to the state. I don't believe there's any legitimate dispute that the state created this program, created the parameters of the program, what was required, how much money was going to be given, what the requirements were from the people asking for the money, and they've dealt with all of those issues. The complaints that she's making is that the state was administering this incorrectly. That in and of itself defeats the argument that this was actually a federal agency. Therefore, no federal agency, no federal statute. We'll go back to the Louisiana statute, which is a 10-year statute. And there are other cases that deal with that. There's a big line of cases that deals with, and I always found this confusing, but the Federal Reserve Banks, which have the word federal in them, so you'd think they're a federal agency, but in reality, the courts have said they're not. They're state agencies, and therefore, the federal statutes don't apply to them. Your Honor, unless the court has any other questions, I would end with... Well, I guess maybe a couple. I'm looking at the statute. One is it defines consumer. I'm assuming you take the position that she's not a consumer under the terms of the statute. I take the position that this, yes, that this is not a... This entire transaction does not fall within the terms of the FDCPA. Therefore, the definitions that are contained within the FDCPA do not apply to the facts of this case. And therefore, there is no... They don't fall within the definitions, and they don't... Because she's not a consumer, because it's not a debt, because there's no transaction. All of the above, Your Honor. There is no debt that falls within the definition of the FDCPA in this case because of the nature of the grant. Well, let's take it one step at a time. So she doesn't owe a debt. I'm sorry? She doesn't owe a debt. She doesn't owe a... She owes a payment obligation, which is different than a debt, which is from that Turner case that was cited in the brief. But no, she does not owe a debt under the Fair Debt Collection Practice Act's definitions. There's an amount of money that she needs to repay. Yes, Your Honor. There's an overpayment that was made to her that they're seeking back. That's not a debt. Not under the terms of the Fair Debt Collection. She doesn't get to just say it. She doesn't get to say, I don't owe it. It's not a debt, I don't owe it. She doesn't get to say that. She owes it. It looks just like a debt, doesn't it? It looks like money that she owes to somebody, yes. Which is what looks like a debt to me. Right, and the fact that... And I think that, again, that's why the court said, look, the Fair Debt Collection Practice Act does not apply to every communication that's made by someone, a non-creditor, saying, look, you owe some money. It doesn't apply. You have a payment obligation that's due. The courts have said not every single one of those applies under the Fair Debt Collection Practice Act. And this is the one... This one doesn't because... Because the Fair Debt Collection Practice Act defines the types of underlying transactions that will fall within its purview. This one does not because what it is is a grant that was provided by the state of Louisiana through funds provided by the federal government. The distinction you're making, that at the time a debt is created, there is an obligation to repay, where here it's mainly a contingency if they don't spend it all on the purposes. That's one of the contingencies. The other contingency would be that they don't comply with the terms of the agreement or they lied on their application. Moving back and occupying. I'm sorry? Moving back and occupying the... Those kind of things. But also if there was a misinformation provided by the applicant with regards to monies that had been received from other sources and things like that, then when that is discovered, then money has to be returned. So those are obligations on the part of the person who receives the money. But the underlying transaction at issue, which is different than all the FDCPA cases that I've seen and I would guess that this court has seen as well, there was no underlying transaction where there was a purchase of goods or services. And instead, this was a grant that was provided by the court. And the statute in its language limits it to purchases of goods or services? I think the statute in its language is not clear as to how far it goes. And all the courts that have interpreted that statute have said there are limits. Not every time someone picks up the phone or writes a letter and says, hey, I'm calling you about some money. My question, though, is the statute in its language doesn't limit it to purchases of goods or services? It doesn't say that, no. It has a definition in it that is broad but I don't believe includes the transaction at issue in this case. I think even when you look at the words of the statute, it does not, this does not fall within it. And it certainly doesn't fall within the interpretation of the statutes made by the various courts in the United States. So, in conclusion, I would say... Has another question? In conclusion, I would say that the FDCPA was promulgated to prevent misconduct in transactions where consumers were purchasing goods or services. And then they were bothered by unscrupulous debt collectors. That's not the situation we have here. We have the federal government in the state of Louisiana, the state of Louisiana promulgating programs, the Louisiana Road Home Act, et cetera, whereby they were seeking to assist their citizens, providing them with grant monies. This is not the type of situation envisioned by the Fair Debt Collection Practices Act. The debt and none of the transaction addition in this case doesn't... I can see your client's a debt collector. I can see that my client was hired by... See, the problem with that, I'm not trying to be evasive, Your Honor, is that debt collector is defined under the Fair Debt Collection Practices Act. I don't agree that the Fair Debt Collection Practices Act applies to this case. I do agree that my client was hired by the state of Louisiana to seek back the overpayments that were made under the grant. So that is a person trying to collect back on... Was it a debt? It just wasn't FDCPA debt? Or was it not debt at all? It was not an FDCPA debt. It was an obligation. When someone gets funds that they're not entitled to, I think that's an obligation as opposed to a debt. So when they self-identified as a debt collector, was that just sort of loose, colloquial? Yeah. And I believe there's opinions from various courts where they said the fact that you put in the words I'm a debt collector doesn't mean that that transfers the case into the Fair Debt Collection Practices Act world. Because with all the litigation that's arisen from this, any time anybody writes a letter, they seem to put that at the bottom of it if they're seeking any kind of obligation or repayment of anything. Yeah. Thank you, Your Honor. Thank you, counsel. Rebuttal. Thank you. I'm going to get to their second issue first because it's just not properly before this court. Procedurally, we are on appeal from the grant of a Rule 12b-6 motion to dismiss on the pleadings. What they're urging now is that this court grant a summary judgment that the district court did not reach because it could not reach it because there had been no discovery and the record was not right to address the question of whether the practices employed by the defendants were, in fact, violative of the terms of the FDCPA. We're not ready to go there. We have certainly preserved a plausible claim on our pleadings that there were unfair collection practices, only one of which is the fact that this debt had probably prescribed before they initiated this collection. But there are other claims in there, too, and they don't even raise those. So all of that, if we get back to the district court, is going to have to be dealt with by the district court after discovery. Counsel, under the definition of debt that you propose, would a scholarship to a university with some contingency requirements, would that be a debt? Yes, it would. If you say, I'm going to do Teach for America and I'm going to receive $30,000 for my college tuition and I'm going to obligate myself to teach for three years at the end after graduation and then you don't do it and they come back after it, it's a debt. This statute is not restricted... Do you think Congress had that in mind as well when it enacted the FDCPA? It absolutely did, and there are cases, there are lots of student loan cases out there. The reason that this type of debt hasn't come up before is because it really is a crazy framework within the road home. And yes, as opposing counsel mentioned, there are lots of cases in which the federal government extends debt. But you know what? In most of those cases... I'm a little slow catching up, but you said there are a lot of student loan cases. My question was about a scholarship. That's different, isn't it? Scholarship to a university with some different contingency requirements. You're talking about, I'm sure, there's a lot of student loan cases. There are. But student loan cases with contingencies. Well, a loan is different. I know that I'm borrowing money on a student loan that I'm going to have to pay back. My question was about a scholarship. I'm sorry, I don't know of any scholarship cases. But there are contingent student loan cases where you don't have to pay it back if you work for the government or you teach or you do something else. The student is acting as a consumer of educational services. There's kind of that transaction that's referred to in the definitions. If you want to look at the statute that way, Mrs. Calogero was a consumer of the Road Home Grant funds. She was taking on funds, extending an obligation in return of what her commitment was. There was the mutuality in this transaction that meant she got something and they got something. And if she didn't fulfill all her commitments or if a mistake was made, then she might owe some money back. But it still, however you look at it, fits within the terms of the statute. And of course, as they've cited, they have the lion's share of cases that say, at a minimum, we require the purchase of goods or services because that's what most consumer debt is. So naturally, that's what most of the cases are. And it makes perfect sense for a court who's looking at collection of a toll tax or theft of money from a meter to say, wait, that's not the payment for goods and services that we require. But most of those cases come in and explain there's no transaction. There was no transaction. There was no mutuality. Thank you, counsel, for your time. Thank you. All right. That concludes our cases on the docket for today. And we will take these matters under advisement. We stand adjourned.